UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ESTATE OF JAMES MARSHALL and
SARA MARSHALL,

               Plaintiffs,                            Case No. 3:22-cv-01470-YY

      v.                                    ORDER

CITY OF FOREST GROVE, STEVEN TEETS,
KOLE MCGANN, and MATTHEW DORICK,

               Defendants.

On October 3, 2023, plaintiffs and defendants City of Forest Grove, Kole McGann, and

Matthew Dorick (collectively "defendants," for purposes of this order) appeared for a telephonic

hearing to obtain the court's assistance in resolving discovery disputes.  The court's rulings are

set forth in this order.

I.      **Discovery Standards**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether

> the burden or expense of the proposed discovery outweighs its
> likely benefit.

FED. R. CIV. P. 26(b)(1).  The court may limit discovery that "is unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive."  FED. R. CIV. P. 26(b)(2)(C)(i).

The court has broad discretion to control discovery.  *Hallett v. Morgan*, 296 F.3d 732,

751 (9th Cir. 2002).  A decision to "deny discovery will not be disturbed except upon the clearest

showing that denial of discovery results in actual and substantial prejudice to the complaining

litigant."  *Id.*

## II.    *Monell* **Claims at Issue**

Plaintiffs allege claims against the City of Forest Grove ("City") and three Forest Grove

Police Department officers arising from the death of James Marshall on October 7, 2020.

Plaintiffs' claims include (1) a Fourth Amendment excessive force claim against the individual

officers, (2) state common law claims of assault and battery against the individual officers, and

(3) claims against the City pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978),

based on its practice or custom of permitting officer misconduct to go undisciplined, failing to

train the individual officers in de-escalation tactics when an individual is having a mental health

crisis, including calling for assistance from the Washington County Mental Health Unit, and

failing to train the individual officers on the reasonable use of force when detaining a person of

interest.[1]  Compl., ECF 1.

Plaintiffs recently filed a Motion for Leave to Amend Complaint (ECF 25) in which they

seek leave to "clarify" their *Monell* claims to allege that the individual defendants acted pursuant

---

[1] Plaintiffs also included a final policymaker claim in their complaint, but are no longer pursuing
that claim.

an expressly adopted official policy or a widespread or longstanding practice of the police department with respect to unconstitutional use-of-force techniques applied to individuals suffering from mental health crises and/or excited delirium. Plaintiffs also move to include a failure to train claim, i.e., that the City failed to provide adequate training, and a ratification claim, i.e., that the police chief ratified the individual officers' acts or failures to act.

Under *Monell*, the City may be liable for a constitutional violation based on: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). A plaintiff also "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (citation omitted). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

A plaintiff also must establish deliberate indifference, for example, that "the policy amounted to deliberate indifference of a constitutional violation," *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001), or that "the deficiency in training actually caused the police officers' indifference to her medical needs." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391-92 (1989). "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Unless there is a single violation with a "highly predictable consequence," *id.* at 398, there must be a pattern of similar constitutional violations to demonstrate deliberate indifference, *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bryan Cnty.*, 520 U.S. at 409).

"*Monell* liability can arise from a failure to train, supervise, or discipline that amounts to an official policy of deliberate indifference to an individual's constitutional rights." *Nordenstrom for Est. of Perry v. Corizon Health, Inc.*, No. 3:18-CV-01754-HZ, 2021 WL 2546275, at *13 (D. Or. June 18, 2021) (citing *Horton*, 915 F.3d at 602-03). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train." *Connick*, 563 U.S. at 61 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822-23 (1985)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Harris*, 489 U.S. at 389. Liability exists when "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can be said to have been deliberately indifferent to the need." *Id.* at 388-89.

"A municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation omitted). "To show ratification, a plaintiff must show that the 'authorized policymakers approve a subordinate's decision and the basis for it." *Id.* (citations omitted). "The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* "A single decision by a . . . policymaker may be sufficient to trigger Section 1983 liability under *Monell,* even though the decision is not intended to govern future situations, but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) (citation and internal quotation marks omitted); *see also Lytle*, 382 F.3d at 986 ("Even minor acts can constitute retaliation sufficient to support a § 1983 claim.").

## III.     Documents Related to Training

Plaintiffs seek "all documents related to any training provided to Forest Grove Police Department officers (within five years preceding October 7, 2020)":

"related to medical implications associated with use of tasers on individuals suffering from excited delirium," RFP 30,

"on proper methods of de-escalation in situations when police officers encounter an individual who is mentally unstable," RFP 40,

"related to the proper methods of detaining individuals who appear to be suffering from a mental health crisis," RFP 47,

"related to takedowns of individuals who appear to be suffering from a mental health crisis," RFP 51,

"related to police officers working together with employees of the Washington County Mental Health Response Team (MHRT)," RFP 64,

"related to officers working together with individuals from the Washington County Mental Health Response Team (MHRT) in situations when the officer is responding to a welfare check which involves an individual suffering from excited delirium," RFP 72,

"as to dispatching MHRT members to assist with calls involving an individual who appears to be suffering from excited delirium," RFP 74,

"on how to effectively work in collaboration with MHRT when responding to a welfare check which involves an individual suffering from excited delirium," RFP 79,

"as to how to effectively identify individuals who appear to be suffering from a mental health crisis while the officer is on patrol," RFP 84,

as to "how to effectively identify individuals experiencing either a mental health episode or drug-induced mental health crisis," RFP 86,

"related to communicating with individuals suffering from a mental health crisis which the officer encounters while on patrol," RFP 87,

"related to how to effectively request assistance from a Washington County Mental Health Response Team unit," RFP 91,

"that excited delirium is a medical condition," RFP 92,

"as to the relationship between excited delirium and drug intoxication," RFP 94,

"related to the ability to identify individuals experiencing excited delirium," RFP 96,

"related to mitigating risks of positional asphyxiation during an arrest or detention," RFP 98,

"on acceptable situations to use a knee-to-neck hold-down to gain compliance from a resisting detainee," RFP 100,

"on acceptable situations for an officer to use his or knee on a subject's upper back during to gain compliance from a resisting detainee," RFP 103,

"as to when an officer can make contact with a subject's neck during the course of an arrest or detention," RFP 110,

"as to how to avoid asphyxiating conditions by not applying substantial or significant pressure to restrain a suspect," RFP 112,

"as to acceptable standards of use of force on detainees suffering from diminished capacity," RFP 117, and

"as to acceptable standards of use of force on for misdemeanor property crimes," RFP 119.

Plaintiff also seek training documents on the same topics "since October 7, 2020." *See* RFP 31, 44, 63, 68, 73, 75, 78, 80, 85, 88, 93, 95, 97, 99, 101, 104, 111, 113, 118, 120.

Defendants have agreed to produce certain training records and materials for the named defendant officers, but object to production of training records and materials for all Forest Grove police officers during this approximately eight-year period (five years before October 7, 2020, to present) on grounds it is overly burdensome, irrelevant, and not proportional to the needs of the case. Defendants contend that plaintiffs' *Monell* claim pertains only to the failure to properly train the individual officers. *See* Compl. ¶ 41, ECF 1. Defendants also explain that, while there may be only approximately 15 police officers currently employed by the Forest Grove Police Department, officers have joined and left the police department during the eight-year period of time. Defendants further assert that some officers may no longer possess training materials, including, for example, their DPSST Field Training Manual.

As defendants correctly observe, the complaint, as it currently reads, only refers to the City's failure to train the individual officers. However, intrinsic to a *Monell* claim is that there is a policy or a custom that is "so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.'" *Trevino*, 99 F.3d at 918 (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* Plaintiffs have expressed concern that, without the training records and materials pertaining to the other officers, they will be foreclosed from proving there is policy or custom that is sufficiently persistent and widespread to constitute a viable *Monell* claim. Moreover, plaintiffs' motion to amend the complaint seeks to clarify that their *Monell* claim encompasses not just the failure to train the individual officers but the failure to train all officers. Considering the

7 – ORDER

requirements of a *Monell* claim, the training records and materials of officers other than the
named defendant officers are relevant.

     Additionally, plaintiffs are entitled to discover information over a sufficient time period
in order to ascertain whether a custom is persistent and widespread.  To accomplish this,
plaintiff's request for information five years preceding the incident date of October 7, 2020, is
reasonable.  *See Couler v. City of Gary, Indiana*, No. 2:21-CV-86, 2023 WL 3052252, at *3
(N.D. Ind. Apr. 24, 2023) (recognizing that courts throughout the Seventh Circuit "routinely
order the production of all files for a five-year period preceding the event at issue in a case" in
cases involving *Monell* discovery requests, and citing cases); *Bouto v. Guevara*, No. 19-CV-
2441, 2020 WL 4437671, at *3 (N.D. Ill. Aug. 3, 2020) (observing that *Monell* production of
five years' worth of files "balances the importance of the production against the burden to the
City"); *Bosworth v. City of San Jose*, No. 18-CV-05459 NC, 2019 WL 13039539, at *1 (N.D.
Cal. July 8, 2019) (allowing *Monell*-related discovery for five years preceding the plaintiff's
arrest).

     Defendants argue that any officer training that occurred after the October 7, 2020 incident
date is irrelevant.  But on that point, this court is guided by the Ninth Circuit's decision in *Henry
v. Cnty. of Shasta,* in which the court observed that "post-event evidence is not only admissible
for purposes of proving the existence of a municipal defendant's policy or custom, but may be
highly probative with respect to that inquiry."  132 F.3d 512, 519–20 (9th Cir. 1997), *as
amended by* 137 F.3d 1372 (9th Cir. 1998).

     During the hearing, defendants voiced concern that officers may no longer be in
possession of their training materials, such as their DPSST Field Training Manuals, and it would
be burdensome to obtain training materials from all of the officers who had been employed

during the eight-year period.  In Oregon, police officers must be certified in accordance with the minimum standards and training established by the Board on Public Safety Standards and Training and the Department of Public Safety Standards and Training ("DPSST").  O.R.S. 181A.410; *see also* O.R.S. 181A.490.  O.A.R. 259-008-0085(1) sets forth minimum standards for "Basic Police Course and Field Training," which "requires successful completion of the 2019 Police Officer Field Training Manual or DPSST-approved equivalent manual."

The 2019 DPSST Police Field Training Manual is available online through DPSST's website,[2] and it would not be surprising if prior versions of the manual are obtainable from DPSST.  Under the circumstances, including that officers have come and gone from the police department over the years, it would be overly burdensome for defendants to produce field training manuals for all of the officers who are not named in this case.  Instead, defendants shall provide plaintiffs with a list of the officers employed between October 7, 2015, through present, including the dates on which they received their certification.  To the extent those officers were trained by DPSST before the 2019 field training manual was used, plaintiffs must seek copies of those prior field training manuals from DPSST.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (authorizing the court to deny discovery where the materials can be obtained from some other sources that is more convenient, less burdensome, or less expensive).

Defendants shall also provide plaintiffs with a list of training courses—regarding use of tasers, mental illness and excited delirium situations, positional asphyxiation, use of less-than-lethal force, and internal and external investigation following use-of-force incidents—that each Forest Grove police officer completed since October 7, 2015, through present.  After the list of

---

[2] www.oregon.gov/dpsst/CJ/CJForms/POL_FTM-M11-19A(F33).pdf.

training courses has been produced, if the parties cannot reach an agreement regarding the

production of training materials (i.e., written documents, slides, etc.) related to those courses,

they may return to the court for further rulings, and the court will consider factors such as

whether production of those materials will be burdensome and proportional, and can be obtained

through other sources that are more convenient, less burdensome, or less expensive.

## IV.    Written Policies and Protocols

Plaintiffs also seek any written policies or standard operating procedures for the Forest

Grove Police Department in effect on October 6, 2020, and made since October 7, 2020, (as well

as revisions and current policies in some instances):

> "related to health risks associated with use of tasers on individuals," RFP 32, 33,
> "related to where on a person's body an officer should seek to avoid tasing an
> individual on his or her body," RFP 34-35,
> "regarding de-escalation when an officer encounters an individual who is
> mentally unstable," RFP 45, 46,
> "related to officers working together with individuals from the Washington
> County Mental Health Response Team (MHRT)," RFP 69, 71,
> "as to dispatching MHRT members to assist with calls for service involving an
> individual who appears to be suffering from excited delirium," RFP 76, 77,
> "related to properly responding to a 'welfare check' involving an individual
> who appears to be suffering from excited delirium," RFP 81, 83,
> "related to communicating with individuals suffering from a mental health crisis
> which the officer encounters while on patrol," RFP 89, 90,
> "related to acceptable situations for an officer to use a knee-to-neck hold-down to
> gain compliance from a resisting detainee," RFP 102, 104,
> "related to acceptable situations for an officer to use his or knee on a subject's
> upper back during to gain compliance from a resisting detainee," RFP 105, 109,
> and "related to how to avoid asphyxiating conditions by not applying substantial
> or significant pressure to restrain a suspect," RFP 114, 116.

The City opposes producing policies that were created or changed since the time of the

incident on grounds such discovery is not relevant.  Again, as discussed above, that argument is

foreclosed by *Henry v. Cnty, of Shasta,* 132 F.3d at 519–20.  Thus, defendants shall produce

these policies and procedures.

### V.    Rule 30(b)(6) Deposition

Defendant seeks to limit plaintiff's Rule 30(b)(6) deposition topics on the basis they are outside the scope of the *Monell* claim asserted in the complaint.  That argument is rejected for the reasons discussed above.

Defendants also contend that plaintiffs' discovery topics "in essence command the City's representative to memorize and/or articulate all training received by every Forest Grove Police Department law enforcement officer for nearly a decade."  Defendants further argue that "a witness cannot fairly be expected to recite such information and as such, this request is unduly burdensome," and that the "training records of the individual employees will speak for themselves."  Otherwise stated, "[h]aving a corporate representative merely restate what has already been documented is neither permissible nor necessary."

Indeed, plaintiffs' 96 Rule 30(b)(6) topics are almost identical to plaintiffs' requests for production.  For example, they include "Forest Grove PD's policy or protocol (effective on October 7, 2020) related to use of tasers on individuals suffering from excited delirium," "Forest Grove PD's current policy or protocol related to use of tasers on individuals suffering from excited delirium," and "[a]ny changes made to Forest Grove PD's policy or protocol (between October 7, 2020, and today) related to use of tasers on individuals suffering from excited delirium."  Not. Dep. 2.  Plaintiff also has noticed "[a]ny training provided to Forest Grove PD officers (within five years preceding October 7, 2020) related to medical implications associated with use of tasers on individuals suffering from excited delirium," and "[a]ny training provided to Forest Grove PD officers (since October 7, 2020) related to medical implications associated with use of tasers on individuals suffering from excited delirium."  *Id.*  Regarding the remaining

topics, plaintiffs similarly refer to training materials and policies or protocols that plaintiffs have otherwise requested and that defendants have produced or are being ordered to produce.

At the hearing, plaintiff's counsel explained that he had fashioned the Rule 30(b)(6) deposition topics to "split the baby," i.e., if defendants were unwilling to provide the written discovery that plaintiffs were requesting, he was willing to instead ask questions about those documents at the Rule 30(b)(6) deposition. But now, the court has ruled on the disputes regarding the written discovery and ordered defendants to produce certain materials. Upon obtaining these materials, plaintiffs shall notice new Rule 30(b)(6) deposition topics. By this, the court is not signaling that plaintiffs cannot inquire about the training records and materials and written policies or protocols that are produced. However, after receiving this additional discovery, plaintiffs will be in a position to more specifically tailor the Rule 30(b)(6) topics so that they are not overbroad and burdensome. "Topics should be drafted in accordance with the widely-recognized understanding that 'Rule 30(b)(6) is not designed to be a memory contest.'" *United States v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (SSX), 2016 WL 11683593, at *7 (C.D. Cal. Oct. 26, 2016) (citations omitted). "[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." *Id.* (citations omitted). "Accordingly, courts 'have not hesitated to issue protective orders when [entities] are asked to respond to overly broad or unfocused Rule 30(b)(6) deposition notices.'" *Id.* (citation omitted).

Finally, defendants expressed concern that the named defendant officers have been deposed about the training they completed, and it would be cumulative and burdensome to ask the Rule 30(b)(6) witnesses about the same training. "[C]ourts have rejected the argument that a Rule 30(b)(6) deposition is unnecessary or cumulative simply because individual deponents . . . have already testified about the topics noticed in the Rule 30(b)(6) deposition notice." *Louisiana*

*Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012).

Thus, the fact that there may be overlap in the deposition questions posed to the individual

officers and the City's designated representatives is not sufficient reason, by itself , to foreclose

questioning on similar topics.

      Based on these rulings, the parties shall confer regarding the currently-set deposition

dates and deadline for completing discovery.  The court will entertain extensions of time if

requested.

      **IT IS SO ORDERED.**

      DATED October 5, 2023.

 

          /s/ Youlee Yim You
          Youlee Yim You
          United States Magistrate Judge

13 – ORDER